UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-4703(DSD/SRN)


Wilson Learning Corporation,
a Delaware corporation,

       Plaintiff,

v.                                      **ORDER**

David W. Schlechte, a
Missouri resident,
Norman H. Evans, A
Missouri resident, and
Douglas M. Schlechte, a
Missouri resident (d/b/a
Personal Skills Development,
a Missouri fictitious business
name),

       Defendants.


Edward T. Matthews, Esq., Nathan J. Hartshorn, Esq., Richard J. Wegener, Esq., Todd A. Wind, Esq. and Fredrikson & Byron, P.A., 200 South Sixth Street, Suite 4000, Minneapolis, MN 55402 and Heidi G. Welsch, Esq. and Welsch Law Offices, 7760 France Avenue South, Suite 1100, Bloomington, MN 55435, counsel for plaintiff.

Arthur G. Muegler, Jr., Esq., 5241 Cathedral Drive, St. Louis, MO 63129; James P. Cullen, Esq. 1700 U.S. Bank Plaza South, 220 South Sixth Street, Minneapolis, MN 55402; Alan I Silver, Esq., Todd J. Thun, Esq. and Bassford Remele, P.A. 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402, counsel for defendants.


This matter is before the court upon defendant Douglas M.

Schlechte's motion for summary judgment, plaintiff's motion to

dismiss defendants'[1] counterclaims and counterdefendants' motion to dismiss defendants' counterclaims.[2]  Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court denies the motion for summary judgment and grants the motions to dismiss.

## BACKGROUND

In one view, this is a rather run-of-the-mill breach of contract action arising from defendants' alleged failure to pay an amount owing on a promissory note.  In another view, it is a complicated antitrust case.  Wilson Learning Corporation ("WLC") develops and sells what it terms "human performance improvement solutions," that is "how-to" books, outlines and other training materials meant to increase individuals' business performance. Defendants David W. Schlechte, Norman H. Evans and Douglas M. Schlechte are former distributors of WLC's products who conducted

---

[1]  Defendant Douglas M. Schlechte does not join in the counterclaims.  Nevertheless, for ease of reference, the court refers to the counterclaims throughout as "defendants' counterclaims."

[2]  The counterdefendants characterize themselves as "third-party defendants."  However, no third-party claim has been asserted against them because defendants do not allege that they are liable "to [defendants] for all or part of the plaintiff's claim against the [defendants]."  Fed. R. Civ. P. 14(a).  Rather, parties joined by a defendant to answer a counterclaim along with a party plaintiff are referred to as "counterdefendants."  See, ironically, Independence Tube Corp. v. Copperweld Corp., 74 F.R.D. 462, 468 (N.D. Ill. 1977).

their business under the fictitious name of Personal Skills Development ("PSD").

For its claim against defendants, WLC alleges that defendants purchased products from it for resale without paying for them. Subsequently, PSD executed a promissory note in WLC's favor in the amount of $114,321.58 of which $78,377 is now due and owing.[3] WLC sues to recover that money under breach of contract and unjust enrichment theories.  WLC also seeks a declaration that the termination of its distributor agreement with defendants was proper and that the termination does not bar collection of PSD's debt. Douglas M. Schlechte moves for summary judgment upon the ground that he was not an owner, partner or joint venturer in PSD.  WLC opposes the motion by submitting evidence that Douglas Schlechte is listed as a one-third owner of PSD on a "registration of fictitious name" document filed with the Missouri Secretary of State pursuant to state statute.  Schlechte's signature also appears on the document next to the instruction "Individual Owners Sign Here."

For their counterclaims against WLC, defendants David Schlechte and Norman Evans allege various violations of federal and Missouri state antitrust law and civil conspiracy under Missouri state law.  Defendants also join as counterdefendants several officers, directors and employees of WLC and several unknown fellow

---

[3]   The complaint also alleges that David W. Schlechte personally guaranteed the debt.

3

distributors of WLC products.  Defendants allege that they, WLC and counterdefendants:

> voluntarily joined together in concert with each other and agreed, conspired and combined to illegally restrain trade and commerce and to lessen competition within the [market for how-to products] through horizontal competitor price fixing, vertical price fixing, horizontal competitor allocation of exclusive markets, horizontal competitor allocation of exclusive customers, group boycotts, price discrimination and other illegal anticompetitive restraints....

(1st Am. Countercl. ¶ 34.)  Among other things, defendants assert that WLC and its officers, directors and employees coerced defendants and other distributors to enter into a "Wilson Learning Corporation Standard Representative Agreement" which "contained and implemented the [conspiracy's illegal restraints]."  (1st Am. Countercl. ¶ 69(a).)  The contract was executed on October 16, 1999.  WLC and the counterdefendants, excluding the John Doe distributors, now move to dismiss defendants' counterclaims.


## DISCUSSION

I.   **Defendant Douglas Schlechte's Motion for Summary Judgment**

   A.   **Summary Judgment Standard**

   Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). A fact is material only when its resolution affects the outcome of the case.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  <u>See id.</u> at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. <u>See id.</u> at 255.  The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  <u>See Celotex</u>, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  <u>Id.</u> at 322-23.

**B.    Merits of the Motion**

The court finds that a genuine issue of material fact exists which precludes summary judgment in defendant Douglas Schlechte's favor.  His motion is therefore denied.

**II.  Motions to Dismiss**

**A.    Standard on Motion to Dismiss**

When considering a motion to dismiss for failure to state a claim, all the facts alleged in support of the claim being attacked are taken as true and construed in the light most favorable to the claimant.  <u>Varner v. Peterson Farms</u>, 371 F.3d 1011, 1016 (8th Cir. 2004) (quoting <u>Kottschade v. City of Rochester</u>, 319 F.3d 1038, 1040 (8th Cir. 2003)).  However, the court is "'free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations.'"  <u>Id.</u> at 1016 (quoting <u>Wiles v. Capitol Indem. Corp.</u>, 280 F.3d 868, 870 (8th Cir. 2002)).  The motion should not be granted unless the claimant can prove no set of facts entitling him to relief.  <u>Kottschade</u>, 319 F.3d at 1040.

When it appears from the face of the pleading that the statute of limitations has run, a limitations defense may properly be invoked in a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  <u>Varner</u>, 371 F.3d at 1016.  If the claimant then wishes to avail himself of an exception to the statute of limitations, he bears the burden to plead and prove that

6

he is entitled to it.  See Wollman v. Gross, 637 F.2d 544, 549 (8th Cir. 1980); Coleman v. Kansas City, Mo., 173 S.W.2d 572, 578 (Mo. 1943) (Missouri law).

**B.   Plaintiff's Motion to Dismiss**

**1.   Antitrust Claims**

WLC argues that all of defendants' antitrust claims are barred by the relevant statute of limitations.  Section 4B of the Clayton Act provides that any action for damages under the federal antitrust laws must be commenced within four years after the cause of action accrued.[4]  15 U.S.C. § 15b.  "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971). Here, the principal act of which defendants' complain is that WLC and others "intimidated and caused WLC representatives, including [defendants], to execute a Wilson Learning Corporation Standard Representative Agreement" which imposed a number of anti-competitive restrictions on defendants' participation in the market for training materials.  (1st Am. Countercl. ¶ 69(a); see also ¶¶ 37.)  This contract was executed on October 16, 1999.[5]  (Id.

_____

[4]  Defendants do not dispute that their claim for violations of Missouri antitrust law is governed by federal antitrust law. (See Mem. Opp'n at 10.)

[5]  Elsewhere, defendants allege that certain of the offending terms had been in effect since as early as 1998 as part of a
(continued...)

¶ 69(a).)   Defendants did not file their counterclaim until
December 20, 2004.  Generally, where a claimant complains of an
anti-competitive agreement, the statute of limitations begins to
run when the claimant becomes subject to the terms of the
agreement.   See Varner, 371 F.3d at 1020.   Later acts in
performance of the agreement do not restart the limitations period.
See id. at 1020.   Therefore, on the face of the pleading,
defendants' federal antitrust claims are outside the statute of
limitations.

Defendants invoke two separate exceptions to the statute of
limitations in a bid to buoy their claims.   First, defendants
allege that their damages from WLC's anti-competitive conduct were
speculative for a time due to a phenomenon which they refer to as
"sales delay."   (1st Am. Countercl. ¶¶ 31-33.)   The speculative
damages exception holds that a cause of action for an antitrust
violation does not accrue until the claimant's damages become
ascertainable.   See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale
Shipyards, Inc., 677 F.2d 1045, 1051 (5th Cir. 1982) (citing
Zenith, 401 U.S. at 339-40), cited in Varner, 371 F.3d at 1019 n.6.
Defendants allege that, to sell products in the marketplace, they
had to undertake a laborious, multiple-step process including

---

[5](...continued)
conspiracy between WLC and its authorized sales representatives.
(See, e.g., 1st Am. Countercl. ¶¶ 39-42.)   Because 1998 is even
earlier than 1999, those allegations do not impact the court's
statute of limitations analysis.

targeting the decisionmaker within a potential customer organization, determining the restrictions on the decisionmaker's authority, developing a personal relationship with the decisionmaker, identifying appropriate products to pitch to the decisionmaker, preparing a sales presentation and so forth. (Id. ¶ 31.) Defendants allege that this "sales delay" would have prevented them from realizing a first sale of market products until December 22, 2000. (Id. ¶ 31.) Defendants further allege that, until that date, their damages were speculative and incapable of proof. (Id. ¶ 31.)

Defendants' "sales delay" allegations are unavailing. The statute of limitations will not be tolled merely because the unlawful act of an antitrust defendant will inflict damages continuing into the future. See Zenith, 401 U.S. at 338-39 (antitrust plaintiffs may recover future damages). The speculative damages exception will only delay accrual of a cause of action when future damages are not susceptible of proof at the time of the antitrust defendant's unlawful act. See id. at 339.[6] Here, defendants' pleading offers no factual basis from which the court

---

[6] Thus, federal courts have distinguished "uncertain damages" from "uncertain extent of damages." Pace Indus., Inc. v. Three Phoenix Co., 813 F.2d 234, 240 (9th Cir. 1987) (citing In re Multidistrict Vehicle Air Pollution, 591 F.2d 68, 73 (9th Cir. 1979)). The former constitutes a plaintiff's inability to establish an injury and, thus, a cause of action. See id. at 240. The latter constitutes mere imprecision in the calculation of damages, which may be settled by the jury's reasonable estimation. See id. at 240.

can conclude that "sales delay" rendered their damages insusceptible of proof. That is, defendants' allegations, taken as true, fail to offer any factual support for the proposition that realization of actual sales, or even the hypothetical realization of sales, was a necessary pre-condition to their ability to prove injury resulting from WLC's conduct. In the absence of such a factual basis, the court must conclude that defendants could have substantiated their damages, through expert testimony or otherwise, prior to December 2000. See, e.g., Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 650 (9th Cir. 1988) (statute not tolled where plaintiff could have presented evidence of projected lost income); Brunswick Corp. v. Riegel Textile Corp., 752 F.2d 261, 271 (7th Cir. 1984). Therefore, the speculative damages exception does not apply.

Defendants also argue that they have alleged a continuing violation of the antitrust laws. "A continuing violation is one in which the [claimant's] interests are repeatedly invaded and a cause of action arises each time the [claimant] is injured." Pace Indus., 813 F.2d at 237 (citing Hennegan v. Pacifico Creative Serv., Inc., 787 F.2d 1299 (9th Cir. 1986)). When a claimant alleges a continuing violation, "'an overt act by the defendant is required to restart the statute of limitations and the statute runs from the last overt act.'" Varner, 371 F.3d at 1019 (quoting Peck v. General Motors Corp., 894 F.2d 844, 849 (6th Cir. 1990)). "An

overt act has two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act, and (2) it must inflict new and accumulating injury on the plaintiff." Id. at 1019 (citing Pace Indus., 813 F.2d at 238).  If an act is merely the unabated inertial consequence of a previous act, the subsequent act will not restart the statute of limitations.  See id. at 1019.  Defendants argue that paragraph sixty-nine of the counterclaim alleges a host of independent overt acts.

Defendants' counterclaim is insufficient to invoke the continuing violation doctrine.  As the court has observed, performance of an alleged anticompetitive contract is not sufficient to restart the limitations period.  Varner, 371 F.3d at 1020.  Defendants admit in the pleading itself that the October 16, 1999, contract "contained and implemented" the illegal conduct which forms the basis of their counterclaim.  (1st Am. Countercl. ¶ 69(a).)  Furthermore, in response to WLC's motion to dismiss, defendants fail to explain how any of the various acts they allege depart from what was contemplated in the contract or were otherwise new and independent.  Therefore, the continuing violation doctrine does not apply.  Defendants' antitrust counterclaims, counts one through five, are dismissed.

## 2.  Civil Conspiracy Claim

Count six of defendants' counterclaim alleges a "civil conspiracy" claim under Missouri state law.  No such cause of

11

action exists.  See <u>Bockover v. Stemmerman</u>, 708 S.W.2d 179, 182
(Mo. Ct. App. 1986), <u>abrogated on other grounds by</u> <u>Roth v. La
Societe Anonyme Turbomeca France</u>, 120 S.W.3d 764 (Mo. Ct. App.
2003).  Rather, in Missouri, civil conspiracy is a theory of joint
liability for a tortious act.  See <u>id.</u> at 182.  If a party fails to
state a claim for an underlying tort, his conspiracy claim fails of
necessity.  See <u>Rice v. Hodapp</u>, 919 S.W.2d 240, 245 (Mo. 1996)
(citing <u>Williams v. Mercantile Bank of St. Louis</u>, 845 S.W.2d 78, 85
(Mo. Ct. App. 1993)).  Here, because of the applicable statute of
limitations, defendants have failed to state any substantive claim.
Therefore, their conspiracy claim must fail as well.  Defendants'
counterclaim against WLC is dismissed.

**C.   Counterdefendants' Motion to Dismiss**

**1.   Sherman Act and Clayton Act Claims**

Counterdefendants Iizuka, Roth, Kielley, Leveille, Magnuson,
Gillem and Skon, each an officer, director or employee of WLC, also
move to dismiss defendants' counterclaims.  At the outset, because
defendants allege that counterdefendants' participation in the
conspiracy was accomplished through WLC's contract with defendants,
it is doubtful that the claims survive the statute of limitations
for the reasons stated above.  (1st Am. Countercl. ¶ 69(a).)
Nevertheless, counterdefendants have identified an additional
fundamental problem with defendants' counterclaims.

Defendants' claims against counterdefendants must be dismissed because, as WLC's officers, directors and employees, counterdefendants cannot have conspired with WLC. The Sherman Act's prohibition of trade restraints implemented by "contract, combination ... or conspiracy" is aimed at the inherent anticompetitive risk posed by the consolidation of efforts by actors "that previously pursued their own interests separately." Copperweld Corp. v. Independence Tube Corp., 467 U.S. 752, 768-69 (1984). Because "[t]he officers of a single firm are not separate economic actors pursuing separate economic interests," they "do not provide the plurality of actors imperative for a § 1 conspiracy." Id. at 769. Furthermore, counterdefendants persuasively argue, and defendants do not deny, that the holding of Copperweld should also apply to defendants' claim under section three of the Clayton Act because its elements are identical to a Sherman Act section one claim. Cf. Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 152 (4th Cir. 1990). Defendants have neither pleaded in their counterclaim nor argued in response to counterdefendants' motion that the counterdefendants' economic interests diverged from those of WLC or that their acts in furtherance of the alleged conspiracy were separate from those of WLC. In fact, in each instance where the counterclaim alleges an "overt act" by counterdefendants, WLC is included as a co-actor. (See, e.g., 1st Am. Countercl. ¶¶ 69(a), (b), (c), (d), (e), (g) &

13

(h).)   Because defendants have failed to allege an actionable antitrust conspiracy with respect to counterdefendants, defendants claims must be dismissed.

### 2.   Other Claims

Defendants have not responded to counterdefendants' arguments that defendants' Robinson-Patman Act claim against them is fatally flawed.  The court dismisses those claims for the reasons cited by counterdefendants.    Furthermore, because defendants Missouri antitrust claim is governed by principles of federal law, it too is dismissed.    Finally, as defendants have failed to state any actionable claim against counterdefendants, defendants' civil conspiracy claim is dismissed for the same reason expressed in section II.B.2. of this order.

### CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.   Defendant Douglas M. Schlechte's motion for summary judgment [Doc. No. 24] is denied.

2.   Counterdefendants' motion to dismiss defendants' counterclaims [Doc. No. 30] is granted.

3.    Plaintiff's motion to dismiss defendants' counterclaims [Doc. No. 34] is granted.

Dated: August 24, 2005

s/David S. Doty
David S. Doty, Judge
United States District Court